Good morning, Your Honors. Nicholas Jimenez, on behalf of Appellant Ronald Smith. Your Honors, I'll endeavor to leave ten minutes for counsel for Mr. Cox. Okay, why don't you divide the time ten and ten. Great, thank you. Thank you. Your Honors, as a result of ineffective assistance of counsel, Appellant Ronald Smith lost the at the start of a very complex case. The record below showed that Mr. Smith's then-counsel failed to properly and timely convey the government's initial offer in this case. And not only did he fail to convey the offer, but after the offer had expired, he advised Mr. Smith that it was not a good offer, that he could receive a better offer if the case went closer to trial, and that even the guidelines calculations in the offer were not to his benefit. I think it's pretty clear that under the case law, there was definitely deficient performance. But what is the prejudice? That's a good question, Your Honor, and I will focus on two sides of it. The prejudice under Frye is, Mr. Smith showed prejudice under Frye because the test requires him to show that if he would have been given the chance to plead guilty, he would have done so. And I think the best fact is that immediately upon the government re-extending the offer, Mr. Smith did accept it immediately. Right, and that's why, so he did get the benefit of the original plea agreement, but your argument is that he would have been better off, because enhancements would not have been, certain enhancements would not have been factually supported if he had been able to accept it earlier rather than later. And I think the Court has hit on the exact point. I think the issue here is two issues. Number one is, the district court failed to even think that it needed to perform this type of inquiry that Your Honor is describing, meaning the court did not attempt to separate in terms of imposing these enhancements as to the information that it had received in the ensuing three years of litigation. The district court basically stepped back and said, you know what, I'm not going to get involved in plea negotiations. The court repeatedly went to, that was the court's justification for saying, I can't do anything about this. When in fact the court could have very well done what Your Honor is suggesting, saying, I'm going to attempt to fashion a remedy where I go back to 2011, 2012 and decide these enhancements on the information that was available to us back at that point. Can you be more specific, for example, tell me what evidence came out after May 25, 2011 that was not evidence at the time the original plea agreement was offered? To the Court's point, the main issue here was, as the Court can see from the plea agreement and the indictment, this was at least two defendants went to trial in front of the same judge. And these were very complex weeks, months long trials that went to the sophistication of the scheme and to Mr. Smith's role in the scheme as a recruiter, a participant, a supposed leader. And so throughout both of these trials, vast amounts of evidence came in that otherwise the court would have had no idea about. And I think the problem is in the plea, in the pre-sentence report, there's a very bare bones recitation of both the leadership enhancement and the sophistication enhancement. And it's clear from the Court's comments at sentencing that the Court was relying upon what it had seen throughout multiple defendants taking their cases to trial. And that's where the government obviously put on a mountain of evidence about the sophistication and leadership and Mr. Smith's role in particular. So there were at least three defendants. And again, the problem is the district court didn't attempt to distinguish one or the other. Mr. Smith isn't saying, and in fact he conceded before the district court that a leadership enhancement could have been appropriate. He just said it doesn't rise to the four levels that the court is imposing here. It could be a two-level enhancement. And the court again didn't fashion a remedy. It didn't say anything. It just said there's nothing I can do about it. We think that's the main error here because the court looks at the sentencing on its face. There's no way to know that the court kind of did this separation that Mr. Smith was entitled to, frankly, for him to receive a full remedy for the actions of his counsel. Is there any way for us to know that the district court wouldn't have had the same qualitative information in a PSR had this happened in May of 2011? I think what the court can look to is the co-defendants that were sentenced at around the start of the case. And who would that have been? Would that have been Watsak? Correct, Your Honor. We mentioned Watsak in our briefing. And the fact is he did not receive a leadership enhancement. He did not receive a sophistication enhancement. And he was part of the same scheme. If the court looks at their... But how were they similarly situated? Everybody has a different role in the scheme, typically is my experience with these types of complex cases. What is the record evidence of how those two were similarly situated? I think if the court compares the factual basis of both of their plea agreements, the factual basis show that both of these men, both Mr. Smith and Mr. Watsak, were leaders. They were in charge of hiring these runners. This scheme involved some people that would go and cash checks fraudulently, among other things. The plea agreements for both men showed that both of them were runners in terms of supervising these folks. They both had people working for them. Now, there's a dispute. The government will say, well, Smith was supervising more people than Watsak. Well, that's an analysis that the district court needed to make. It simply wasn't made here. But on the facts of the plea, of the PSR and the factual basis of their plea agreements, they basically, they were responsible in a supervisory capacity. And moreover, they were also involved in the same sophistication. It was the exact same scheme. It wasn't that Watsak was running one racket on the side and Mr. Smith another. It was the exact same scheme. Mr. Smith, the court found that Mr. Smith was running a sophisticated scheme and it didn't do the same for Watsak. So I think that's the more direct evidence of what it would have looked like initially at the start of the case, aside from some other issues that we mentioned in our briefing, meaning the record actually suggests that part of the reason that the government sought these enhancements and argued for them against Mr. Smith was because they were upset that he was basically getting the plea agreement three years later, which clearly is not something that should have factored into the consideration because it wasn't Mr. Smith's fault at this case. But counsel, let me ask you this. I think the date we keep talking about is May 25th, 2011, when the plea agreement was first offered and obviously not conveyed. It seems to me that the delta of time we want to talk about is not when that plea offer was initially conveyed, but when we would speculate to when the sentencing would occur. Correct? That's right. Really, that's the relevant date. That would be the relevant date. So how do we know with all these other things going on, a lot of times district court judges will say, look, I'm going to hold off sentencing in this case because I want to see how this trial comes out because I want all the facts before me. How do we know it would have been any different in light of that? We, the court is correct. We, there's really no way to know when Mr. Smith's sentencing would have been. We know that several co-defendants that did plead on, plead early in the case did plead several months afterwards. I think Mr. Watsak was in a kind of particular position because I think he had a cooperation plea agreement. The government mentions in their briefing, no, he didn't plead guilty until three years later. I think that's, the court can see from the PSR, it's under seal. I think the court held him out because he, he, he, it's a safe assumption. I see where you're going. So I think Mr. Smith, the court can assume could have been sentenced in that initial wave and if anything, this is also something that the district court needed to consider and the court just basically punted on its responsibility. We think that's, that's why there, it's, there's error and I'll save the remaining of my time. All right. Thank you, counsel. Good morning. May I please the court, Jennifer Kuhn on behalf of Appellant Llewellyn Cox. I would also like to reserve two minutes for rebuttal. This appeal raises a number of issues, but I'm going to focus on the district court's undue delay in addressing Mr. Cox's unequivocal request for self-representation, its failure to grant a brief continuance of sentencing, thereby impeding his ability to meaningfully represent himself, the court's denial of his appeal. Mr. Cox is requesting a remand to a different district judge to avoid an appearance of bias. I think the shadow over this case is Mr. Cox's allegations of ineffective assistance of counsel by his trial counsel and government misconduct. I'm sure those issues will be aired more fully in subsequent or separate proceedings, but those issues could and should have been explored more fully at the district court level prior to judgment if the court hadn't made the errors that we've raised here. So to begin with, the undue delay, which really amounted to a denial in Mr. Cox's unequivocal request for self-representation. Wait, the undue delay you're talking about is the weekend? Yes, Your Honor. He made a request in the afternoon of an evidentiary hearing when a witness was testifying as to some witness identifications, which Mr. Cox hotly disputes. Is this BASC? It was Agent Schwark testifying as to the circumstances of the identification, and then subsequently Jessica Baku, who had made one of those alleged identifications. This was a critical stage of the proceedings for Mr. Cox. His request was timely, and it was made as soon as he realized that his counsel was not challenging that testimony to his satisfaction, and he made that request no less than four times that afternoon, unequivocal request to represent himself. This was not for the purpose of delay. He was prepared to immediately step in and take over those witness examinations, and as the district court subsequently found after the weekend recess, his request was voluntary, intelligent, and he was competent, and the request ultimately was granted. But the request should have been immediately addressed that afternoon as required under the law. Instead, the court erred in repeatedly denying his request without addressing the relevant factors and delaying the Feretta hearing until the following Monday. What was the prejudice and harm, though? I think that the first witness that was on had maybe another question or two after that, and then ultimately didn't the court exclude the evidence from, is it Ms. Baku? I was pronouncing it wrong, tying him to the conspiracy. So when that was excluded, and we're talking about, I want to say like a question or two, what was the harm or prejudice? I think the primary prejudice was forcing Mr. Cox to proceed with a counsel in whom he lacked confidence. But by denying his request for self-representation, the court denied him the opportunity to question Agent Schwark himself or Ms. Baku himself regarding the circumstances of the witness identification. As the court's aware, there's been a lot of post-judgment pro se filings by Mr. Cox in which he raises a host of attacks on the circumstances of those witness identifications that he believes to be fraudulent, backdated, and so on. But because those witnesses were both excused over the weekend before Mr. Cox could step in, he lost his opportunity to personally examine them, and in the case of Ms. Baku, to challenge question-by-question invocation of her Fifth Amendment rights, and to elicit further testimony regarding the circumstances of the photo lineup and her purported identification of Mr. Cox. Also, his defense counsel allowed Ms. Baku to leave with the only copy of an investigator memo, which has subsequently been submitted in post-judgment litigation, that would have fleshed out her position as to the lack of identification that wasn't brought out in testimony because of her invocation. But did the court consider any of her identification testimony then? The court allowed her to make a blanket invocation of her rights, and then at sentencing the court said that it was reducing the number of victims to, I believe it said, to account for the Baku situation. Mr. Cox maintains, though, that had this testimony been fully explored it would have gone beyond Ms. Baku's identification to basically cast doubt on the reliability of the entirety of the government's lost evidence, and that he lost his chance to make that challenge. A related issue is the court's failure to grant a brief continuance of the sentencing the following Monday after granting Mr. Cox his right, finally, to self-representation. This failure to grant a very brief continuance, basically a four-day continuance, impeded Mr. Cox's ability to meaningfully represent himself because that investigator memo had been lost and the investigator was on vacation for a few days. Mr. Cox was not able to present the testimony that he wanted to, again, attacking the reliability of the evidence and the witness identifications. And at this point the sentencing had already been put over for several years, and he had just been granted his right to represent himself that morning, so a delay of several more days should not have inconvenienced anyone. And then finally, the disrequised denial of his motion to withdraw the guilty plea. As I've argued, the court applied the wrong legal standard. The standard was whether Mr. Cox had raised a fair and just reason to withdraw his plea. He has the burden to put forward that reason, but that standard is applied liberally, and he need not have shown actual evidence to the counsel. Here, the district court did not cite or address that standard. It instead focused on whether Mr. Cox's plea had been entered freely, voluntarily, and in compliance with due process. I think really focusing on the quality of the Rule 11 colloquy rather than the circumstances of the plea negotiations, which is what Mr. Cox raises here. He was entitled to effective assistance during plea negotiations, but his defense counsel mischaracterized the loss amount and sentencing exposure prior to plea. That was corroborated by his counsel's statement in the district court that he had assumed that all loss evidence would have been produced prior to the discovery cutoff, and that he had calculated a maximum loss that was far lower than the government later tried to establish at sentencing. Here, however, the district court did not hold a hearing or make any factual findings regarding these allegations, but rather just denied the motion out of hand. And that may have also been because the district court was misinformed as to the status of the plea negotiations, having been informed that there had not been, when in fact there had been, an offer made of a plea agreement with a 15-year stipulated sentence. So due to all of these errors, as well as the court's statements that suggest an appearance of bias, I would ask the court to reverse and remand to a different district court judge. Thank you, counsel. Good morning, Your Honors. May it please the court, my name is Julia Reese and I represent the United States. I'll start first with Mr. Ronald Smith's matter and then move on to Mr. Llewellyn Cox's matter, unless the court would prefer something different. And with regard to Mr. Smith's case, there are two salient points that got brought up during the opening argument that I want to address here. First is that the entire argument for Mr. Smith presupposes that he is entitled to have separate information considered, that he is entitled to have the district court disregard all of the information that was learned or possibly learned, because we don't actually have sufficient record development on that issue, after the point that the plea was offered. And that's simply not the remedy that Lafler contemplates. And counsel, real quick, it's not when the plea was offered, it's when the first sentencing would have occurred. Yes, and to that point, Judge Owens, that is correct. And we do have indications in the record of what the court's preferences were with respect to sentencing. And at ER 37, the district court expressly said that its preference is to have defendants, particularly defendants who are similarly situated, sentenced around the same time. Again, that's at ER 37. Do you agree that he was similarly situated to WADSEC? No, Your Honor. Mr. WADSEC was differently situated for a number of reasons. Mr. WADSEC and Mr. Smith were both relatively high in the scheme, but Mr. Smith and Mr. WADSEC were different in several important respects, one of which is Mr. Smith oversaw and recruited more bank, corrupt bank insiders. Mr. WADSEC's primary role was recruiting and overseeing the runners that went into the banks, and Mr. Smith did some of that, but Mr. Smith also recruited corrupt bank insiders, which the government considered to make him more culpable than Mr. WADSEC. In addition, Mr. Smith exercised more control over victim account information, and that, again, also made him more culpable than Mr. WADSEC. Mr. Smith was closer in the scheme to Mr. Cox, although slightly below Mr. Cox. And to that point, Mr. Cox and Mr. Smith were actually sentenced at approximately the same time as each other. Mr. Smith was sentenced in July of 2014, as well as Mr. Cox, and that is where the Court's comment with respect to its preference to sentence similarly situated defendants comes into play in discussing the contemporaneous nature of the Cox and the Smith sentencing. What was the level of leadership enhancement given to Cox and then to Smith? I believe Mr. Cox got a level 4, both of them got a level 4 leadership enhancement, I believe. I can confirm it if that's wrong. I'll submit a letter to the Court. But again, here, so the idea that he would even have been sentenced at a time that would have allowed the information to differ materially is not really supported by the record and is highly speculative. But the idea that he even is entitled to be sentenced on the information that was in place at the time that the offer was made is expressly disavowed in Lafler. And Lafler, the Supreme Court, expressly declined to adopt a rule that would, quote, present, or that would require district courts to present, that is to say, disregard any information concerning the crime that was discovered after the plea was made. And given that expressed disavowal of that constitutional rule as a requirement and the Supreme Court's repeated insistence in Lafler that the remedy is up to the district court's discretion, it cannot be that the district court was required to exclude from consideration whatever information arose after the plea offer was made. Do you think it's appropriate that we consider this issue here, or do you think it's more appropriate that it be considered as a 2255? Your Honor, frankly, on this record, this Court can affirm. I do believe that in the government's position is that there is sufficient information for the Court to affirm. If the Court is concerned about what information there is, for example, the dearth of information regarding what discovery was available at the time the plea offer was made, there are also disputes about what advice Mr. Little rendered and a dispute about whether the advice that Mr. Little rendered, in fact, would constitute deficient performance under the highly deferential standard of Strickland. And given those disputes, if the Court is concerned and believes that further record development is necessary in order to decide whether Mr. Little rendered deficient performance at all, and if so, whether Mr. Smith was prejudiced by it, then a 2255 would be the appropriate vehicle to do that. And I'll wrap up Mr. Smith just by noting that what Mr. Smith seeks here is the windfall that Lafleur expressly provides, that the balance that the district court should undertake should preclude. He was requesting a sentencing that is blind to facts about the offense conduct to which he does not dispute. And he also is effectively asking to bind the government and the Court to a particular offense level, which is not the nature of the plea agreement that was originally offered. And given that Lafleur instructs district courts not to grant a windfall to defendants in fashioning their remedy, that alone is sufficient on which the Court to affirm. And unless there are any further questions on Mr. Smith, I'll move on to Mr. Cox. On Mr. Cox's case, the biggest hurdle that he has to overcome with respect to, or not the biggest hurdle, but a hurdle that he definitely has to overcome with respect to his Faretta claim, his continuance claim, and his loss amount dispute claims, is he has to show that he was prejudiced and that those were harmful errors. Now, there was no prejudice, and the errors, if there were any, were absolutely harmless. And the calculations are set forth in the government's answering brief as to what loss amounts would even arguably fall out, even if you give the benefit of every doubt to Mr. Cox here. Even if you exclude all losses up to 2008, his, the defendant's only intended loss amount would drop by only $615,000, or $615,000 approximately, which is well under the $2 million drop in losses that would be necessary in order to bring Mr. Cox's own losses, for which he is personally responsible, down from $9 million to below the $7 million threshold to have any impact on his guidelines range. But more fundamentally, the information that Mr. Cox wishes was before the court, in fact, was before the court. Ms. Bakui had already testified regarding her writing, that's at GER 263, she had already testified that the writing on the identification card was not hers and she did not recognize it. And Agent Schork was already cross-examined regarding the identification, not only at the sentencing hearing, but also at an earlier motion to And the cross-examination at the sentencing hearing is at GER 218 to 230. He was cross-examined about that at length, and the district court, in fact, then went through a colloquy with counsel to confirm the district court's understanding of the significance of the point that Mr. Cox and his counsel were trying to make regarding the back identification. And because that information was before the court already, the court had the relevant facts that it needed in order to evaluate the situation. And as Judge Dorsey pointed out, the court did discount the back losses entirely. And in addition to that, with regards to the Spada memorandum, the court said that it was unwilling to consider the Spada memorandum for the framed job inference that Mr. Cox was hoping to support with the memorandum. And given that the district court was unwilling entirely to consider it based on the proffer that was made by Mr. Cox and his counsel, it can't possibly have been harmful for that information to have been excluded from the sentencing proceeding. As to the merits on the Feretta claim, the government's position is that the request was untimely, and it was certainly within the district court's discretion to delay consideration of Mr. Cox's Feretta invocation until after the brief weekend recess, particularly given that the request was made in a context that made it seem to the court that it was an impulsive request. And it did seem like an impulsive response to the trial court's, excuse me, to the fact that the cross-examination of Agent Schwartz didn't go as well as Mr. Cox had hoped. And given that the response seemed impulsive, the district court was well within its discretion when it said in light of this untimely response and in light of this highly emotional and impulsive response, and particularly in light of the other experiences that I've had with you in these in-camera proceedings where you have expressed dissatisfaction with your attorney, but said that you wished to keep him on as your representative, I am not going to consider this request right now. And given that the nature of the request at the time was untimely, emotional, and equivocal, the court was entitled at that point to balance the interests to Mr. Cox against the burden that it would impose on the court and the parties. And in particular, the witnesses who were there, Agent Schwartz, who had already been directed, cross-examined, and redirected by that point. The only thing remaining was his re-cross-examination. He had flown in from Washington, D.C. for the occasion. And Ms. Bakui herself, she had been waiting for multiple days. She had a new baby. She was there. And as defense counsel pointed out, it was a particular burden on her for her to continue to come to court day after day. And given that balance and the fact that the district court has broad discretion to manage its courtroom, it certainly was well within the district court's ability to delay consideration of the Faretto request for a brief weekend recess. As to the withdrawal of the guilty pleas, just because the district court didn't specifically articulate that the standard that it was applying was a fair and just reason does not mean that this court presupposes that the district court misapprehended the law that it was supposed to apply. And in fact, this court's precedent says exactly the opposite. It says that we do not presuppose that a district court misapprehended the law that it was supposed to apply. And given that Mr. Cox's claim was, my guilty plea was not knowing and intelligent because I misapprehended the sentence that I was facing, it was reasonable for the district court to look to whether his plea was entered knowingly and voluntarily. And this court's precedent does indicate that when the nature of a defendant's request to withdraw his guilty plea is premised on an allegation that it is not knowing and voluntary or unintelligent, then a court can consider the nature of the colloquy in evaluating whether the request to withdraw the plea should be granted. And also, fundamentally, given the nature of the claim, which is, my counsel misadvised me and I misunderstood what the sentence that I was facing was, this court's precedent is clear in stating that only in extreme circumstances, in rare circumstances, will advice regarding the nature of the sentence that you are facing be sufficient basis upon which to withdraw your guilty plea. And this is not a situation in which the defense counsel grossly mischaracterized the sentence that the defendant was facing. In fact, the only dispute that there is is about loss. That's a two-level difference. That's the dispute that's at issue. Mr. Cox knew full well the amount of the loss that the government was seeking to hold him to account for because the government repeatedly stated that it believed the losses were in excess of $10 million in July of 2011. That also was reflected in the plea offer that Mr. Cox rejected. And so Mr. Cox said that there was any dispute. It was a marginal dispute at best, certainly far below the disputes and the advice that this court has affirmed as not providing a basis upon which to withdraw the guilty plea. I would point the court's attention to Briggs, in which the defendant expected a sentence of 200 and the guidelines range was ultimately 360 to life. And that was insufficient to provide a base. And that defendant's misapprehension was insufficient to provide a basis upon which to withdraw his guilty plea. If the district court err in not ruling, finding that he lacked jurisdiction to rule on the post-judgment motions? Your Honor, the district court would have had jurisdiction to rule on the post-judgment motions, but I would point the court to the alternative ruling that the district court made, which is at ER 14, that it would have declined to entertain the post-judgment motions in any event. At that point, Mr. Cox was seeking simply to re-litigate issues that are presently before this court on appeal. The nature of the Rule 60B motions that he filed were that relating to the prosecutor's error with respect to whether any 15-year plea offer had ever been made and the Spada memorandum, which I would point out that the substance of the memorandum was before the district court, before the time of sentencing anyways. I will also note that as the government notes in its answering brief, the rules of civil procedure are not an available avenue for relief in criminal cases. I know that federal rule of criminal procedure 37 has effectively mirrors Rule 60B, and in that sense this court's application of its precedent in Scott and Gatt is particularly appropriate here even though those cases relate to Rule 60B motions. Federal rule of criminal procedure 37 in the advisory committee notes specifically indicates that the purpose of federal rule of criminal procedure 37 is to import a Rule 60B remedy into the criminal context. To the extent it's error, you're arguing it would be harmless error because all those issues were already ruled on anyway. The district court's alternative ruling is that it would decline to entertain the post-judgment motions, which is not appealable. It's an interlocutory decision, which this court would be bound to dismiss given that it is an interlocutory appeal. But in any event, yes, the government's position would be that it's harmless because whether these issues are presently before this court and to the extent that Mr. Cox would like to bring any claims regarding newly discovered evidence, that would be an available remedy in collateral attack. As to the request for recusal and reassignment to a different judge, Your Honor, I would point out that the precedent is clear in saying that expressions of impatience, dissatisfaction, annoyance, or even anger that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, is not a sufficient basis upon which a district judge must recuse themselves for consideration of a case. Given the record as a whole, taking comments that the court made out of context, clearly the court here did have a lot of patience with Mr. Cox and erred in Mr. Cox's favor repeatedly in connection with the sentencing. A few statements taken out of context that are mere expressions of annoyance are not sufficient to warrant reassignment to a different judge, and I indicated that it was erring in Mr. Cox's favor in handing down a sentence. Unless the panel has any further questions, I will sit down and rest on the briefs. All right. Thank you, counsel. I'll address a few quick points, Your Honor. As to the 2255, it would seem unfair that the government acts below specifically to preempt a 2255 issue, which is their admission to the district court, and now they argue we should go back and have a 2255 proceeding. That would be unfair to Mr. Smith on several levels, among which he would be then subject to a certificate of appealability on his sentencing when he should be entitled to appeal his sentencing and the district court's findings in full if he so desires upon resentencing, which he would not be able to do if we go back for a certificate of appealability and fall into the 2255. In any event, because the record is not fully developed, it's because the government basically said there's no need to develop anything, we're good, and we'll re-extend the offer. In terms of this issue that Mr. Smith is seeking a windfall, Mr. Smith is only seeking what the law and Lafler and these case law entitles him to have, which is to be put in the position he was at the time of the Sixth Amendment violation. And in this case, it only meant for the district court to undertake some sort of analysis as to the information that would have been available to it at the time of the violation, not three years later, litigation, I'm going to take these facts into account. And I think the court can see from the sentencing the court just simply did not apply that legal standard. The court didn't recognize that it had this obligation to remedy the violation by going back in time. My time is up. Thank you. All right. Thank you, counsel. Thank you. Just briefly, regarding the Baku testimony, it is true that Ms. Baku had already stated that the proceeding on the identification was not hers, but there were other issues that could have been presented, including that she was pressured to make the identification that the agent had promised to clear or expunge her record, and that she no longer identified Mr. Cox. And as to the investigator memo, Ms. Spada, or her testimony, she could have presented evidence as to other witnesses who were making similar allegations, calling the witnesses into question. We understand the government's position as to the triviality of the difference in loss. Mr. Cox's position, which he set forth in detail in his filings, is that it would be a $2.8 million difference in loss calculations that were not supported by evidence or were erroneous. Regarding his request to represent himself, I dispute that it was an impulsive or emotional request. Those were repeated call-and-requests detailed at the transcript of June 27, 2014, at page 137 on, and there were no inconvenience to the witnesses because Mr. Cox was prepared to step in and examine them right then and there. Regarding the withdrawal of his plea, as the case law indicates, even if he can't show that he would not have pled guilty, that can still warrant withdrawal, and it's not cured by a proper colloquy, this was not a marginal dispute. He had a plea agreement with a 15-year stipulated sentence, and he ended up with a 25-year sentence. And the district court didn't engage in this issue because it wasn't informed of the circumstances of the prior plea negotiations, so those weren't properly explored. And finally, regarding recusal, I would just say that the district court's threat to increase the loss from $13 million to $20 million, if this case was remanded or basically litigated further, goes beyond any appropriate antagonism from the circumstances of the litigation and justifies remand to a different judge. Thank you. All right, thank you, counsel. U.S. v. Cox and Smith is submitted, and the session of the court is adjourned.
judges: Wardlaw, Owens, Dorsey